Sutliff, J.
The fact that the election, and subscription of stock by the trustees, and their issue of the bonds, were subsequent to the adoption of the constitution of 1851, presents, substantially, the same question decided in the case of Cass v. Dillon, 2 Ohio St. Rep. 607.
In that case the decision turned upon the question, whether the act of assembly of March 24, 1851, authorizing a subscription of stock in the Cincinnati, Wilmington and Zanesville Railroad Company (49 O. L. Laws 539), was abrogated by the new constitution. That act was for a similar purpose, and contained provisions similar to the acts of assembly of February 19,1851, and of March 20, 1849, presented for consideration in this case.
Although the question, as an original one, when presented in that case, seemed to be one not free from embarrassments and doubt, the majority of the court held that the acts of. the assembly, passed under the constitution of 1802, authorizing subscriptions and issuing of bonds, was not abrogated by the new constitution; an opinion with which we are well satisfied.
The provision of the new constitution, by which, it is said, these laws were abrogated, is contained in sec. 6 of art. 8, and is in these words:
“ The general assembly shall never authorize any county, town, or township, by vote of its citizens or otherwise, to become a stockholder in any joint stock company, corporation or association whatsoever, or to raise money for, or loan its credit to, or in aid of any such company or corporation, or association.”
This provision, it will be observed, does not inhibit such subscription, or issuing of bonds, by virtue of existing laws. It only prohibits the general assembly from passing such laws in future, after the adoption of the new constitution. It is therefore evident that the subscription and issuing of the bonds, not being forbidden by the constitution, the same were valid by force of the acts under which issued, *399 unless those acts of assembly were abrogated by that or some other provision of the new constitution. But the section referred to is the only one particularly relating to this subject; and if those acts of the general assembly are repealed by this provision of the constitution, it must be by implication merely, as no such intention is expressed.
Sec. 1 of the schedule in the new constitution, provides that “ all laws of this state in force on the first day of September, 1851, not inconsistent with this constitution, shall continue in force until amended or repealed.”
Unless, therefore, the acts of assembly in question are such as cannot consist with the provision of section 6 of art. 8, the constitution does not require their abrogation, but expressly requires that they shall continue in force.
It is a well settled rule of law, that repeals by implication are never favored. And this rule applies, as well to the constitution and previously existing statutes, as it does to old statutes and new. If any reasonable construction may be given to each, so that both may stand, such construction must be given. If it cannot be, but the two are evidently irreconcilable and cannot reasonably coexist, the former statute must of necessity give way, and be considered as abrogated or repealed by implication.
In the case of Evans v. Dudley, 1 Ohio St. Rep. 441, Judge Ranney, in remarking upon this subject, uses the following lafiguage: “ As repeals by implication are not favored, the repugnancy between the provisions of two statutes must be clear, and so contrary to each other that they cannot be reconciled, in order to make the latter operate a repeal of the former.”
But in this case there is no inconsistency in the language of the acts of assembly, and the provision of the constitution under consideration. The provision of the constitution is prospective in its terms. There are many other provisions of the constitution likewise prospective in their terms, and which inhibit, in future, such legislation and *400 laws as the constitution found existing, and evidently contempla ted. leaving unimpaired and in full force. Such is the provision in sec. 1, art. 18, that “ the general assembly shall pass no special act conferring corporate powers.” Section 7 of the same article provides that, “ no act of the general assembly authorizing associations with banking powers shall take effect until it shall be submitted to the people at the general election next succeeding the passage thereof, and be approved by a majority of all the electors voting at such election.” And there are numerous provisions in the new constitution prohibiting the passing, in future, such laws as are to be found, and in full force, here and there throughout our statute book. But no lawyer has ever supposed the fact of an inhibition by the new constitution upon a future legislature passing similar laws, is by necessary implication a repeal of such existing acts passed under the old constitution, and in accordance with its provisions.
It is, however, upon this point of the case sufficient to .say, that we fully assent to the reasoning and conclusions of the majority of the court in the case of Cass v. Dillon, as expressed by the able and learned opinion delivered by Judge Thurman in that case. This court has had occasion, at different times heretofore, to carefully consider various objections urged to the constitutionality of statutes similar to those under consideration, and their constitutionality has been unifoi’mly affirmed by the court. The validity of the acts of assembly referred to, can, therefore, no longer be regarded by the court as doubtful. See C. W. Z. R. R. Co. v. Comm’rs of Clinton Co., 1 Ohio St. Rep. 77; S. & I. R. R. Co. v. Trustees of North Township, Ib. 105; Citizens’ Bank v. Wright, 6 Ohio St. Rep. 518; State ex rel. Garrett v. Van Horn, 7 Ohio St. Rep. 327.
It is further insisted, that even if the acts of assembly be regarded as in full force, their provisions have not been so complied with as to render the bonds obligatory.
The proofs in the case, with the agreed statement of *401 facts, show that a survey of the road had been made before the election; that the election was held and conducted substantially in accordance with the requirements of the statute; and that the survey and location of the line of the road was made within the required distance.
In the case of The State ex rel. Garrett et al. v. Van Horn, 7 Ohio St. Rep. 827, this court held that, in such a case as the one under consideration, where the tax payers had, without protest or interference, suffered the election to take place, and authorized the subscription to be made and the bonds to be negotiated, they could not afterwards, as against innocent bond holders, deny their recognition of the acts of their agents, on the ground that the railroad was not located until after the election and subscription.
"We are well satisfied with the correctness of this doctrine, and its reasonable application as expressed in that case; and if the proof left any similar question in this case in doubt, we could not withhold the application of the same rule. To withhold such application would certainly be in disregard of the most wholesome application of the doctrine of estoppel in an appropriate case for its exercise. The case is simply this: The inhabitants and tax payei’s of Union township, under the statutes referred to, call an election, and by a vote of 247 to 41, assert their right to subscribe for, and become owners of, $15,000 of the stock of the road, and to pay for the same by negotiating their bonds to that amount; and, by their vote, they instruct their agents^ the trustees, to subscribe for the stock, and to issue and negotiate the bonds. Under this instruction, and, at least the tacit assent of the 41 voters, the trustees subscribe for the stock, and issue the bonds and negotiate them, and thereby pay for the stock as requested. Third persons, reposing in full confidence upon the bona fide character of the transaction on the part of the township, purchase the bonds; no individual in the township protesting or even making any objection to the subscription, or the issuing and negotiation of the bonds. • And, as if *402 to give to third persons still stronger confidence in the bonds, the township has continued year after year for a number of years to assess and pay a tax to meet the annual interest upon those securities. Under these circumstances it is, that the township, while still retaining the pi-ice axxd proceeds of the bonds, proposes to set up as a defense to their payment, that the township had not in fact proceeded in all respects strictly in conformity with the statute in issuing said bonds; and that, therefore, they are void.
We hold that the township, as to third persons, holding in good faith these securities, is estopped to aver a matter in defense so evidently inconsistent with its previous conduct and representations in the premises.
It is urged, however, on the part of the defense, that, notwithstanding the bonds contain words of negotiability, and were transferred to the relators for value-before due, it appears upon their face that they were issued by vii’tue of the authority conferred upon the trustees by said acts of the general assembly, and the election held in pursuance thex’eof. But to give this argument any force, the fact of issuing the bonds must have been an independent act of a third party. When taken in connection with the fact that the trustees in issuing the same were acting under the direction, and in fact as the agents of the township, the recitals of the bonds become those of the principal, and would seem rather to estop the trustees to allege any thing contrary to such recitals.
Indeed the defense proposed to be set up, that in issuing these securities the township had not been careful in all x-espects to comply with the provisions of the statutes under which the proceedings were had, would seem to savor too xnuch of taking advantage of ones own wrong to meet much favor in a court of justice. It would cex’tainly be counter to the spirit of the maxim, nemo ex suo delicto meliorem snam conditionemf acere potest.
This is not such a case as that where an officer, acting *403 independently upon his own mistaken construction of a law, places himself without its provisions, so that his acts cease to be official and obligatory upon others. The trustees in this case not only acted officially, hut they acted under the instructions as well as with the actual assent of the tax payers and voters, whose agents they in fact were, in making the subscription, and issuing the bonds. The township has also, as before remarked, received and still holds the price and fruit of the bonds, negotiated at their direction. The township cannot, therefore, in such case be permitted to repudiate the acts of its agents, the trustees, who negotiated the bonds.
Ve think, therefore, that the township authorities ought to pay the over due interest.

Peremptory mandamus awarded.

Swan, Brinkerhobi' and Scott, JJ., concurred.